**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DARIN JOHNSON, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NICE PAK PRODUCTS, INC.,<br><br>    Defendant. | Civil Action No.: 1:23-cv-1734<br><br>**NOTICE OF REMOVAL** |

Defendant, Nice Pak Products, Inc. (hereafter "Nice Pak" or "Defendant"), by and through undersigned counsel, hereby gives notice that this action, *Darin Johnson v. Nice Pak Products, Inc.,* Cause No. 49D01-2308-PL-033187, is hereby removed to this Court from the Indiana Commercial Court, Marion County, Indiana, pursuant to the Class Action Fairness Act ("CAFA").

**NATURE OF THE CASE**

1.    On August 23, 2023, Plaintiff Darin Johnson filed this action in the Marion County Superior Court (Commercial Court) of Indiana.

2.    Plaintiff alleges that Defendant Nice Pak is "the largest global producer of pre-moistened wipes, including the iconic Original Wet Nap, N Nice 'N Clean, and Grime Boss." Compl. ¶ 20.

3.    Plaintiff also alleges that Nice Pak "maintains corporate offices, manufacturing facilities, and distribution facilities in multiple countries and various states in the United States," in addition to "a manufacturing facility and a distribution facility in Indiana." *Id*. at ¶¶ 21-22.

4.    According to Plaintiff, "[o]n or about August 14, 2023, Nice Pak sent notice

to its employees and issued a public statement notifying current and former employees and their dependents that . . . an unauthorized actor viewed and obtained files store[d] in certain devices in Nice Pak's network." *Id.* at ¶¶ 2-3.

5.      Plaintiff further alleges that "this compromised PII included current and former employees and their dependents' names, addresses, dates of birth, Social Security numbers, health plan member numbers, and health savings account numbers." *Id.* at ¶ 5.

6.      Plaintiff alleges that Nice Pak "failed to properly use up-to-date security practices" and "failed to promptly notify victims of the Data Breach of the types of information that was stolen." *Id.* at ¶ 11. According to Plaintiff, "Nice Pak's negligence and failure to abide by its promise to maintain the privacy of its employees' PII caused real and substantial damage to Plaintiff and members of the proposed Class." *Id.* at ¶ 12.

7.      As a result, Plaintiff asserts claims against Nice Pak for negligence, negligence *per se*, breach of implied contract, and unjust enrichment.

8.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1), which states that the notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Plaintiff served Nice Pak on August 28, 2023.

9.      Because the putative class contains more than 100 members, the amount in controversy exceeds $5,000,000, and minimal diversity exists, this case is removable under CAFA. 28 U.S.C. § 1332(d).

**VENUE**

10.      Removal to this District is proper because this Court embraces Marion County, Indiana. 28 U.S.C. § 94(b).

## CAFA JURISDICTION

11.    In support of removal, Defendant provides the following "short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a).

12.    Removal is proper under CAFA, "which creates jurisdiction when three requirements are met: the amount in controversy exceeds $5 million, at least one class member and any defendant are citizens of different states, and there are at least 100 class members." *Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1050 (7th Cir. 2022), citing 28 U.S.C. §§ 13332(d)(2), (d)(2)(A), (d)(5)(B). For purposes of CAFA, minimal diversity is satisfied when one plaintiff is diverse from one defendant. 28 U.S.C. § 1332(d).

13.    In enacting CAFA, Congress unambiguously signaled its intent "to expand substantially federal court jurisdiction over class actions." *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 681 (7th Cir.2006) (quoting S. Rep. 14, 109th Cong. 1st Sess. 43 (2005)). "Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.*

14.    In particular, Congress was concerned that there were instances where state courts were guilty of "keeping cases of national importance out of Federal court," and were "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." *Id.* at 682 (citing Pub. L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4).

15.    Indeed, the Seventh Circuit has recognized that a district court's decision to exercise federal jurisdiction pursuant to CAFA does not depend "on a high degree of certainty that jurisdictional facts exist," and that a defendant's "jurisdictional allegations control unless it is legally impossible for them to be true." *Betzner v. Boeing Co.*, 910 F.3d

3

1010, 1014 (7th Cir.2018) (quotation omitted). "To the extent there is a presumption against removal in ordinary diversity cases, it does not extend to cases in which there is a contrary congressional policy favoring removal." *Hammer v. United States HHS*, 905 F.3d 517, 526 (7th Cir. 2018), citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014). After a defendant establishes the jurisdictional requirements of CAFA are met, "the party seeking remand has the burden to establish any exception to CAFA jurisdiction." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012).

### A.     The Putative Class Size Exceeds 100.

16.     CAFA provides that the district courts shall not have jurisdiction over actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Plaintiff here seeks to represent "[a]ll citizens of Indiana whose PII was compromised in the Data Breach, including all citizens of Indiana who were sent a notice of the Data Breach." Compl. ¶ 59.

17.     Plaintiff alleges that "Nice Pak has employed thousands of Indiana citizens since it started operating in the State." *Id.* at ¶ 23. Nice Pak mailed notification letters to approximately 8,646 potentially impacted persons (the "notified population"). Thus, the putative class exceeds 100 and this jurisdictional requirement is met.

### B.     The Amount in Controversy Exceeds $5,000,000.

18.     Under CAFA, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied when a complaint does not allege a specific amount of damages. 28 U.S.C. § 1446(c)(2)(B). The sum asserted by the party seeking federal jurisdiction "must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." *Meridian Sec. Ins. Co. v. Sadowski*,

441 F.3d 536, 541 (7th Cir.2006) (collecting cases).

19.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. In states like Indiana, which forbid dollar amounts or figures from being included in a pleading (*See* Ind. Trial R. 8(A)(2)), the removing party has the burden of showing "what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir.2006); *see also Dart,* 574 U.S. at 81 ("As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions.").

20.    Under CAFA, the district court determines whether it has jurisdiction "by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determin[ing] whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S 588, 592 (2013).

21.    Here, Plaintiff seeks undefined actual compensatory damages, exemplary damages, punitive damages, statutory damages, restitution, actual damages, attorneys' fees, and equitable relief. *See* Compl. at Prayer for Relief.

22.    One of the damages being sought by Plaintiff is the "[o]ut-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud." *Id.* at 44. The cost of credit monitoring is one "out-of-pocket expense" commonly associated with the prevention, detection, and recovery that Plaintiff alleges he and the Class are at risk of in the future. Three main identity-protection agencies— Equifax, IDShield, and Experian—advertise monthly rates for credit-monitoring services

ranging from $14.95 to $24.99 per person per month. For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 assistance, among other services, for $14.95 per month for one individual.[1] Similarly, both Equifax[2] and Experian[3] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 a month, respectively. Assuming the middle ground, the cost to Nice Pak would be $718.20 per class member ($19.95 x 36 months) for three years of credit monitoring. Based on the notified population, this number on its own meets the amount in controversy (8,646 people x $718.20 = $6,209,557.20).

23.    In addition, Plaintiff seeks equitable relief "enjoining Defendant from further deceptive practices," and "[a]warding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class." Compl. at Prayer for Relief.

24.    As noted in the Report of the Senate Committee on the Judiciary on CAFA, when assessing the amount in equitable relief claims, "[A] declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000." Senate Report at 41. Thus, the aggregate cost of the equitable relief Plaintiff requests—essentially that Nice Pak cease and desist its allegedly unlawful conduct—would likely exceed the jurisdictional threshold absent any monetary damages. Either way, the amount in controversy exceeds $5,000,000 on the face of the Complaint.

---

[1] *See IDShield Plans & Pricing*, https://www.idshield.com/#plans (last visited Sep. 21, 2023).
[2] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=50235599488 (last visited Sep. 21, 2023).
[3] *See Experian CreditLock*, https://www.experian.com/protection/creditlock/ (last visited Sep. 21, 2023).

### C.    Minimal Diversity Exists.

25.    Under CAFA, there is "minimal diversity" so long as "any member" of the proposed class of plaintiffs is either "a citizen of a State different from [the] defendant," or is "a citizen or subject of a foreign state and any defendant is a citizen of a State." 28 U.S.C. §1332(d)(2)(A)-(B). Courts consider the citizenship of all putative class members, both named and unnamed, as of the date of filing of the complaint. *See id.* at §1332(d)(1)(D), (d)(7).

26.    Plaintiff's proposed class is expansive and includes both current Indiana citizens and persons who were Indiana citizens at the time that they were employed with Nice Pak but have since established citizenship elsewhere. *See* Compl. ¶ 59 (defining the class as "All citizens of Indiana whose PII was compromised in the Data Breach, including all citizens of Indiana who were sent a notice of the Data Breach."). Plaintiff's proposed class definition lacks any temporal scope. "[C]lass definitions generally need to identify a particular group, *harmed during a particular time frame*, in a particular location, in a particular way. *Mullins v. Direct Digital, Ltd. Liab. Co.*, 795 F.3d 654, 660 (7th Cir. 2015) (emphasis added) (citations omitted).

27.    Here, a person who was an Indiana citizen when they provided their information to Nice Pak is a member of the class under the plain language of Plaintiff's definition—even if that person has since relocated and is now a citizen of another state for purposes of CAFA diversity. *See, e.g., Brown v. Wellpet LLC,* No. 3:21-cv-00576-HAB-SLC, 2023 WL 3483935, at *21 (N.D. Ind. Mar. 31, 2023) ("As written, it is unclear whether the proposed Class includes residents who have moved from the Class area."); *see also Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021) ("But the definition does not limit the class to current Florida residents [or citizens] . . . Thus, the

7

class definition on its face encompasses class members who currently reside in Florida facilities [and are citizens of Florida] and those who resided in facilities [and were citizens of Florida] during the relevant four-year period, but have since moved to another state. . . . [C]itizenship for purposes of CAFA jurisdiction is based on *current residency and an intent to remain.*") (emphasis added).[4]

28.     This temporal interpretation of the putative class also follows from Plaintiff's allegations. According the complaint, Plaintiff was "employed with Nice Pak from June 2009 to July 2012." Compl. ¶ 39. Given that he himself provided the information at issue over 14 years ago, it is clear that the claims cover a large span of time.

29.     Coupled with the fact that, to date, Defendant has sent notifications of the Data Incident to addresses in almost every state, Puerto Rico, and internationally, it is more likely than not that at least one member of the putative class is now a citizen of a state different than Indiana. In fact, only around 34% of the notification letters mailed by Nice Pak went to addresses in Indiana. Considering that Plaintiff was first employed by Nice Pak in 2009, and that Nice Pak has "employed thousands of Indiana citizens since it started operating in the State," it is probable that at least one individual notified at the 66% of non-Indiana address is a former citizen who is included in the class definition yet is now a citizen of another state for purposes of minimal diversity. Compl. ¶ 23.

30.     The broad temporal allegations can only point to a similarly broad

---

[4] *See also, e.g., Arbuckle Mt. Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 343 (5th Cir. 2016) (exercising CAFA jurisdiction because the class definition did not clearly limit class membership of gas and mineral "owners" to current, Texas citizens); *Anderson v. Davis Wright Tremain LLP*, Case No. 3:20-cv-01194-AC, 2021 WL 7184127, at *11–13 (D. Ore. July 14, 2021) (denying motion to remand and declining to read a temporal limitation into class definition which stated "Class Members are . . . Oregon citizen[s]" and noting that the plaintiff's definition lacked a temporal term like "currently"); *In re Hannaford Bros Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 77 (1st Cir. 2009) (defining class to explicitly exclude "any persons and entities who [wer]e not citizens of the State of Florida").

interpretation of the putative class that includes both current and former citizens of Indiana. Because Nice Pak is a citizen of Indiana, and it is more likely than not that at least one of the putative class members notified is a former citizen of Indiana who has established citizenship in another state, the circumstances here establish the diversity necessary for CAFA removal because at least one class member is not a citizen of Indiana. *See* 28 U.S.C. §1332(d)(2)(A).

31.    Accordingly, because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, federal jurisdiction is proper.

## REMOVAL PROCEDURES

32.    Nice Pak timely files this Notice of Removal within thirty days of receiving the Complaint on August 28, 2023. 28 U.S.C. § 1446(b).

33.    Nice Pak attaches a copy of "all process, pleadings, orders, and other documents" currently on file in the state court as **Exhibit A** hereto. *Id.* at § 1446(a). The attachments in the State Court Record, in chronological order, are as follows:

   a. Class Action Complaint and Jury Demand (also attached separately as **Exhibit B** per local rule 81-2(d));

   b. Appearance of Attorneys Lynn Toops and Amina Thomas for Plaintiff;

   c. Summons to Defendant;

   d. Notice Identifying Commercial Court Docket Case;

   e. Appearance of Attorneys Tyler Moorhead and Philip Zimmerly for Defendant;

   f. Defendant's Notice of Automatic Enlargement of Time to Answer or Otherwise Respond to the Complaint; and

   g. A copy of the state court docket sheet as of this filing date.

34.    Pursuant to Local Rule 81-2, Nice Pak verifies that the attached state court

record is complete as of the date of removal.

35.     Nice Pak will promptly give written notice to all adverse parties and the clerk of the Court of Marion County. *Id*. § 1446(d).

## CONCLUSION

For the forgoing reasons, Defendant, Nice Pak Products, Inc., by counsel, hereby removes this action, *Darin Johnson v. Nice Pak Products, Inc.,* Civ. No. 49D01-2308-PL-033187 (Marion Superior Court 1 (Indiana Commercial Court)), to this Court pursuant to 28 U.S.C. § 1332(d).

Dated:  September 27, 2023

BOSE MCKINNEY & EVANS LLP

/s/ *Tyler J. Moorhead*
Tyler J. Moorhead (34705-73)
Philip R. Zimmerly (30217-06)
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
(317) 684-5173 (Fax)
tmoorhead@boselaw.com
pzimmerly@boselaw.com

BAKER & HOSTETLER LLP

Carrie Dettmer Slye (*Pro Hac Vice* to be filed)
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Tel: (513) 929-3400
cdettmerslye@bakerlaw.com

*Attorneys for Defendant Nice Pak Products, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 27, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, and further certify that I also served all counsel of record via email.

Lynn A. Toops
Amina A. Thomas
Cohen & Malad LLP
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

*Attorneys for Plaintiffs*

/s/ Tyler J. Moorhead
Tyler J. Moorhead

4645479