# EXHIBIT A

## Complete State Court Record

## INDIANA COMMERCIAL COURT

STATE OF INDIANA )        IN THE MARION SUPERIOR COURT 1
)  SS:
COUNTY OF MARION )        CAUSE NO.
)

DARIN JOHNSON, on behalf of himself )
and all others similarly situated, )        CLASS ACTION COMPLAINT
              Plaintiff, )
 v. )
)        JURY TRIAL DEMANDED
NICE PAK PRODUCTS, INC., )
)
              Defendants. )

## CLASS ACTION COMPLAINT

Plaintiff, Darin Johnson, individually and on behalf of all others similarly situated, brings

this action against Defendant, Nice Pak Products, Inc. ("Defendant" or "Nice Pak"), and alleges

as follows:

### NATURE OF THE ACTION

1.      In May 2023, Nice Pak, a worldwide manufacturer of wet wipes, lost control over

its employees' highly sensitive personal information in a data breach by cybercriminals (the "Data

Breach").

2.      On or about August 14, 2023, Nice Pak sent notice to its employees and issued a

public statement notifying current and former employees and their dependents that on June 15,

2023, it had "identified unusual activity on certain devices in its network." *See* Ex. A (the

"Notice Letter"); Ex. B ("Website Notice").

3.      Specifically, "between May 28, 2023 and June 15, 2023, an unauthorized actor

viewed and obtained files store[d] in certain devices in [Nice Pak's] network."  On July 24,

2023, Nice Pak "determined that one or more of the files contained information maintained for

employment purposes." *Id.*

4.    As a result of the Data Breach, Nice Pak reported that certain Personally Identifying Information[1] and Protected Health Information[2] (collectively "PII") of Nice Pak's current and former employees and their dependents was affected.

5.    This compromised PII included current and former employees and their dependents' names, addresses, dates of birth, Social Security numbers, health plan member numbers, and health savings account numbers. Ex. A.

6.    Upon information and belief, victims of the Data Breach did not start receiving letters notifying them of the Data Breach or detailing which specific types of their PII was compromised until over two months after Nice Pak discovered the Data Breach. *See* Ex. A.

7.    The Notice Letter urged Plaintiff and victims of the Data Breach to "be vigilant for incidents of fraud or identity theft by reviewing our account statements and free credit reports for any unauthorized activity. *Id.*

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Nice Pak, not every type of information included in that definition was compromised in the breach.

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. A "covered entity" is further defined as, *inter alia*, a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA. *Id. Covered entity*. Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://bit.ly/30Bg7gZ (last accessed Nov. 18, 2021). Nice Pak is clearly a "covered entity" and some of the data compromised in the Data Breach that this action arises out of is "protected health information", subject to HIPAA.

8.      The Notice Letter also encouraged Plaintiff and other victims of the Data Breach to consider, *inter alia*, placing credit freezes on their credit files, place or extend fraud alerts on their credit file, monitoring accounts, ordering copies of their credit reports, and reviewing statements received from health insurance and health care providers. *Id.*

9.      Nice Pak offered 12 months of complimentary credit monitoring through Experian IdentityWorks to the affected victims as a result of the Data Breach.

10.     As a consequence of the Data Breach, Plaintiff and Class members' sensitive PII has been released into the public domain and they have had to, and will continue to have to, spend time to protect themselves from fraud and identity theft.

11.     Plaintiff and members of the proposed Class are victims of Nice Pak's negligence and failure to honor its promise to keep PII private. Specifically, Plaintiff and members of the proposed Class trusted Nice Pak with their PII. But Nice Pak betrayed that trust. Nice Pak failed to properly use up-to-date security practices to prevent the Data Breach, and when the Data Breach was discovered, Defendant failed to promptly notify victims of the Data Breach of the types of information that was stolen.

12.     Nice Pak's negligence and failure to abide by its promise to maintain the privacy of its employees' PII caused real and substantial damage to Plaintiff and members of the proposed Class.

13.     Further, because this same information remains stored in Nice Pak' systems, Plaintiff and Class members have an interest in ensuring that Nice Pak takes the appropriate measures to protect their PII against future unauthorized disclosures.

14.     Plaintiff, individually and on behalf of all others similarly situated, thus brings this class action against Nice Pak for failing to adequately secure and safeguard the PII of

Plaintiff and the Class, breaching the terms of Nice Pak's implied contracts with its patients, and failing to comply with industry standards regarding the use and transmission of PII.

15.     Plaintiff is a former Nice Pak employee and Data Breach victim, who suffered identity theft following the Data Breach. Plaintiff brings this class action on behalf of all employees harmed by Nice Pak's misconduct.

## PARTIES

16.     Plaintiff, Darin Johnson, is a natural person and citizen of Indiana, residing in Indianapolis, Indiana, where he intends to remain. Plaintiff is a former Nice Pak employee and Data Breach victim, receiving Nice Pak's Breach Notice in or around August 2023.

17.     Defendant, Nice Pak, is a New York corporation with its principal place of business in Orangeburg, New York. Its headquarters are located at 2 Nice Pak Park, Orangeburg, New York.

## JURISDICTION & VENUE

18.     This Court has jurisdiction over the subject matter of this action by virtue of Indiana Rule Trial Procedure 4.4(A)(4) because Nice Pak operates and provides services within the state of Indiana.

19.     This case is eligible for the Indiana Commercial Court docket under Indiana Commercial Court Rules 2 and 4.

## BACKGROUND FACTS

A.     **Nice Pak**

20.     Nice Pak is the "largest global producer of pre-moistened wipes, including the iconic Original Wet Nap®, N Nice 'N CLEAN® and GRIME BOSS®."[3]

21.     Nice Pak maintains corporate offices, manufacturing facilities, and distribution

---

[3] https://www.linkedin.com/company/nice-pak-products-inc-/

facilities in multiple countries and in various states in the United States.

22.    Nice Pak maintains a manufacturing facility and a distribution facility in Indiana.

23.    Nice Pak has employed thousands of Indiana citizens since it started operating in the State.

24.    To work at Nice Pak, Nice Pak requires its employees to disclose their PII.

25.    That PII includes their names, addresses, dates of birth, and Social Security numbers.

26.    In exchange, Nice Pak implicitly promises to secure its employees' PII.

27.    But, on information and belief, Nice Pak never implemented or enforced the reasonable cybersecurity measures and policies necessary to deliver on those promises.

**B.    Nice Pak fails to safeguard employee PII**

28.    Plaintiff is a former Nice Pak employee. Plaintiff was employed with Nice Pak from June 2009 to July 2012.

29.    Nice Pak collects and maintains employee PII in its computer systems as a condition of their employment.

30.    In collecting and maintaining the PII, Nice Pak agreed it would safeguard the data according to state and federal law and its internal policies, including those above.

31.    Despite those promises, Nice Pak lost control over its employees' PII.

32.    In May 2023, hackers bypassed Nice Pak's cybersecurity undetected and accessed its employees' PII. Nice Pak did not detect the hack when it happened, nor would it for two weeks, meaning Nice Pak did not have the means to prevent, detect, or stop data breaches before hackers could access and steal PII.

33.    Nice Pak detected the breach on June 15, 2023. As a result, cybercriminals could access and pilfer the PII belonging to Nice Pak employees from May 28, 2023 until June 15,

2023—two weeks after the breach started.

34. Thus, cybercriminals accessed and stole employees' PII, including their names and Social Security numbers, health insurance plan information, and health savings account information. Indeed, Nice Pak refers to the Data Breach as the "Health Plan Incident."[4]

35. Nice Pak did not notify its employees that hackers had stolen their information, nor would it until August 2023.

36. By July 24, 2023 Nice Pak concluded its "investigation" and notified its employees about the breach.

37. Nice Pak is warning its employees and their families to monitor their credit scores and enroll in credit monitoring, thus recognizing that employees should protect themselves from identity theft following the Data Breach.

38. On information and belief, Nice Pak failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over employee PII. Nice Pak's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PII. Further, the Breach Notice makes clear that Nice Pak cannot, or will not, determine the full scope of the Data Breach, as it has been unable to determine exactly what information was stolen and when.

**C.     Plaintiff's Experience**

39. Plaintiff is a former Nice Pak employee, having been employed with Nice Pak from June 2009 to July 2012.

40. As a condition of Plaintiff's employment, Nice Pak required Plaintiff to disclose his PII.

---

[4] https://www.nicepak.com/home; https://www.nicepak.com/media/wysiwyg/nicepak/Nice-Pak_Notice-of-health-plan-incident_v2.pdf (last accessed August 23, 2023).

41.     Plaintiff provided his PII to Nice Pak and trusted that the company would use reasonable measures to protect it according to Nice Pak's internal policies and state and federal law.

42.     Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**D.      Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

43.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

44.     As a result of Nice Pak's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a.   The loss of the opportunity to control how their PII is used;

   b.   The diminution in value of their PII;

   c.   The compromise and continuing publication of their PII;

   d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

     f.   Delay in receipt of tax refund monies;

     g.   Unauthorized use of stolen PII; and

     h.   The continued risk to their PII, which remains in the possession of defendant and is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the PII in their possession.

45. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

46. The value of Plaintiff and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

47. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

48. One such example of criminals using PII for profit is the development of "Fullz" packages.

49. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

50. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain

information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

51. Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

52. Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**E.     Defendant failed to adhere to FTC guidelines.**

53. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

54. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices

for business.  The guidelines explain that businesses should:

  a.  protect the personal customer information that they keep;

  b.  properly dispose of personal information that is no longer needed;

  c.  encrypt information stored on computer networks;

  d.  understand their network's vulnerabilities; and

  e.  implement policies to correct security problems.

55. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

56. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

57. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

58. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS ACTION ALLEGATIONS

59. Plaintiff sues on behalf of himself and the proposed Class ("Class"), defined as

follows:

> All citizens of Indiana whose PII was compromised in the Data Breach, including all citizens of Indiana who were sent a notice of the Data Breach.

Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

60.     Plaintiff reserves the right to amend the class definition.

61.     This action is properly maintainable as a class action under Indiana Rules of Trial Procedure 23(A) and (B)(3).

62.     Numerosity. Nice Pak employs thousands of individuals. Therefore, members of the Class are so numerous that joinder of all members is impractical.

63.     Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

64.     Whether Defendant failed to adopt the practices and procedures necessary to adequately safeguard the information compromised in the Data Breach;

65.     Whether Defendant timely, adequately, and accurately informed Class Members that their PII had been compromised;

66.     Whether Defendant breached its implied contract with Plaintiffs and the Class;

67.     Whether Defendant was unjustly enriched;

68.     Whether Defendant acted negligently;

69.     Whether Class members are entitled to damages as a result of Defendant's wrongful conduct;

70.     Whether Plaintiffs and the Class are entitled to restitution as a result of Defendant's

wrongful conduct; and

71. Whether Plaintiffs and the Class are entitled to injunctive relief.

72. Typicality. Plaintiffs' claims are typical of those of other Class members because Plaintiffs' PII, like that of every other Class member, was compromised by the Data Breach. Further, Plaintiffs, like all Class members, were injured by Defendant's uniform conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of other Class members arise from the same operative facts and are based on the same legal theories.

73. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights Plaintiffs suffered are typical of other Class members, and Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, including data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

74. Superiority of Class Action. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

75. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

76. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

77. Predominance. Pursuant to Rule 23(B)(3), the issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include but are not limited to the questions identified above.

78. This proposed class action does not present any unique management difficulties.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

79. Plaintiff reallege all previous paragraphs as if fully set forth below.

80. Plaintiff and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

81. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII— just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless

disregard for the security and confidentiality of Plaintiff' and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

82.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

83.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff' and members of the Class's personal information and PII.

84.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

85.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

86.    Defendant breached its duties by failing to exercise reasonable care in supervising

its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

87. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
### Negligence Per Se

**(On Behalf of Plaintiff and the Class)**

88. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

89. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

90. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive PII.

91. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its employees in the event of a breach, which ultimately came to pass.

92. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

93. Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and the Class's PII.

94. Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

95. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

96. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff

and members of the Class, Plaintiff and members of the Class would not have been injured.

97.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

98.    Had Plaintiff and members of the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

99.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

## COUNT III
### Breach of an Implied Contract

### (On Behalf of Plaintiff and the Class)

100.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

101.    Defendant offered to employ Plaintiff and members of the Class in exchange for their PII.

102.    In turn, Defendant agreed it would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard employee PII.

103.    Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for employment with Defendant.

104.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

105.    Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such agreement with Defendant.

106.    Defendant materially breached the contract(s) it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and members of the Class by:

a.    Failing to properly safeguard and protect Plaintiff and members of the Class's PII;

b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c.    Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

107.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

108.    Plaintiff and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

109.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in

connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

110. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

111. Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

112. In these and other ways, Defendant violated its duty of good faith and fair dealing.

113. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

## COUNT IV
### Unjust Enrichment

### (On Behalf of Plaintiff and the Class)

114. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

115. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

116. Plaintiff and members of the Class conferred a benefit upon Defendant in the form of services through employment.

117. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class. Defendant also benefited from the receipt of Plaintiff and

members of the Class's PII, as this was used to facilitate their employment.

118. Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendant at the payrates they did had they known Defendant would not adequately protect their PII.

119. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.    Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.    Granting such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 23, 2023

Respectfully submitted,

*s/ Lynn A. Toops*_____
Lynn A. Toops (No. 26386-49)
Amina A. Thomas (No. 34451-49)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
T: (317) 636-6481
F: (317) 636-2593
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

*Counsel for Plaintiff and the Proposed Class*

Filed: 8/28/2023 3:03 PM
Clerk
Marion County, Indiana
Marion Circuit Court

# INDIANA COMMERCIAL COURT

STATE OF INDIANA       )      IN THE MARION SUPERIOR COURT 1
                     ) SS:
COUNTY OF MARION      )      CAUSE NO.
                     )

DARIN JOHNSON, on behalf of himself    )
and all others similarly situated,          )
               Plaintiff,       )
 v.                               )
                              )
NICE PAK PRODUCTS, INC.,        )
                              )
             Defendants.      )

## <u>APPEARANCE BY ATTORNEY IN CIVIL CASE</u>

Party Classification:

     Initiating _X___          Responding ____          Intervening_____

1. The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member(s): <u>Plaintiff Darin Johnson, individually and on behalf of all others similarly situated</u>

2. Applicable attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

 Name: <u>Lynn A. Toops</u>         Atty No: <u>26386-49</u>
      Address: <u>Cohen & Malad, LLP</u>    Phone: <u>(317) 636-6481</u>
      <u>One Indiana Square, Suite 1400</u>    Fax: <u>(317) 636-2593</u>
      <u>Indianapolis, IN 46204</u>        E-mail: <u>ltoops@cohenandmalad.com</u>

Name: <u>Amina A. Thomas</u>       Atty No: <u>34451-49</u>
      Address: <u>Cohen & Malad, LLP</u>    Phone: <u>(317) 636-6481</u>
      <u>One Indiana Square, Suite 1400</u>    Fax: <u>(317) 636-2593</u>
      <u>Indianapolis, IN 46204</u>        E-mail: <u>athomas@cohenandmalad.com</u>

3. There are other party members: Yes _ No <u>X</u>  (If yes, list on continuation page)

4. *If first initiating party filing this case:* the Clerk is requested to assign this case the following Case Type under Administrative Rule 8(b)(3): <u>n/a</u>

5. I will accept service by FAX at the above-noted number:  Yes ___    No <u>X</u>

6. This case involves support issues. Yes __ No <u>X</u>

1

(If yes, supply social security numbers for all family members on continuation page)

7. There are related cases: Yes ___ No _X_ (If yes, list on continuation page)

8. This form has been served on all other parties. Certificate of Service is attached: Yes_X_ No_

9. Additional information required by local rule:    none

Dated: August 23, 2023                                  Respectfully submitted,

                                             /s/ Lynn A. Toops
                                             Lynn A. Toops (No. 26386-49)
                                             Amina A. Thomas (No. 34451-49)
                                             COHEN & MALAD, LLP
                                             One Indiana Square, Suite 1400
                                             Indianapolis, IN 46204
                                             (317) 636-6481
                                             ltoops@cohenandmalad.com
                                             athomas@cohenandmalad.com

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically on August 23, 2023. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

                                             /s/ Lynn A. Toops
                                             Lynn A. Toops

2

## INDIANA COMMERCIAL COURT

STATE OF INDIANA          )         IN THE MARION SUPERIOR COURT 1
                           ) SS:
COUNTY OF MARION         )         CAUSE NO.
                           )

DARIN JOHNSON, on behalf of himself    )
and all others similarly situated,           )
                 Plaintiff,        )
    v.                              )
                                 )
NICE PAK PRODUCTS, INC.,       )
                                 )
              Defendants.      )

## SUMMONS

**To:**    **Nice-Pak Products, Inc.**
        **c/o Corporation Service Company, Registered Agent**
        **135 N. Pennsylvania Street, Suite 1610**
        **Indianapolis, IN 46204**

You are hereby notified that you have been sued by the person named as plaintiffs and in the Court indicated above.

The nature of the suit against you is stated in the complaint, which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiffs.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by the plaintiffs.

If you have a claim for relief against the plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer.

If you need the name of an attorney, you may contact the Indianapolis Bar Association Lawyer Referral Service (317-269-2222), or the Marion County Bar Association Lawyer Referral Service (317-269-2000).

Dated:    8/24/2023                 _Katherine Sweeney Bell_   (Seal)

                                     CLERK, SUPERIOR COURT

(The following manner of service of summons is hereby designated.)

1

__X_   Registered or certified mail.
_____ Service at place of employment, to-wit: _____
_____ Service on individual – (Personal or copy) at above address.
__X__ Service on agent.  (Specify) **c/o Corporation Service Company, Registered Agent, 135 N. Pennsylvania Street, Suite 1610, Indianapolis, IN 46204**
_____ Other service.  (Specify)

*s/ Lynn A. Toops*_____
Lynn A. Toops (No. 26386-49)
Amina A. Thomas (No. 34451-49)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 2023, I mailed a copy of this Summons and a copy of the Complaint, to the defendant, by _____ mail, requesting a return receipt, at the address furnished by the plaintiff.

_____
Clerk of the Circuit/Superior
Court of Marion County

Dated: _____, 2023        By: _____
                                                    Deputy

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the Complaint, mailed to defendant, was accepted by the defendant on the ____ day of _____, 2023.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the Complaint was returned not accepted on the _____ day of_____, 2023.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the Complaint, mailed to defendant was accepted by _____ _____ on behalf of said defendant on the ____ day of _____, 2023.

_____

2

Clerk of the Circuit/Superior
Court of Marion County

Dated: _____, 2023        By: _____

                                                    Deputy

**INDIANA COMMERCIAL COURT**

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT 1 |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |
| | ) | |

| | |
|---|---|
| DARIN JOHNSON, on behalf of himself and all others similarly situated, | ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| NICE-PAK PRODUCTS, INC., | ) ) |
| Defendants. | ) |

## NOTICE IDENTIFYING COMMERCIAL COURT DOCKET CASE

The undersigned states that this case is a Commercial Court Docket Case eligible for assignment to the Commercial Court Docket pursuant to Rule 2 of the Commercial Court Rules.

Pursuant to Rule 4 of the Commercial Court Rules, the undersigned requests that the Clerk of Court assign the case to the Commercial Court Docket.

Dated: August 23, 2023    Respectfully submitted,

/s/ *Lynn A. Toops*
Lynn A. Toops
Amina A. Thomas
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

***Counsel for Plaintiffs and the Proposed Class***

1

## **CERTIFICATE OF SERVICE**

I certify that a copy of this document was filed electronically on August 23, 2023. Notice

of this filing will be sent to counsel of record by operation of the Court's electronic filing system.


/s/ Lynn A. Toops
Lynn A. Toops

Filed: 9/15/2023 3:40 PM
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | MARION COUNTY SUPERIOR COURT |
| | ) SS: | |
| MARION COUNTY | ) | CAUSE NO. 49D01-2308-PL-033187 |

|  |  |
|---|---|
| DARIN JOHNSON, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| NICE PAK PRODUCTS, INC., | ) ) |
| Defendant. | ) ) ) ) |

### APPEARANCE BY ATTORNEYS IN A CIVIL CASE

1.    The party on whose behalf this form is being filed is:

Initiating ____          Responding **X**          Intervening ____ ; and

the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

Name of party **Defendant, Nice Pak Products, Inc.**

Address of party *(see Question # 5 below if this case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order)*

c/o Bose McKinney & Evans LLP

Telephone # of party c/o Bose McKinney & Evans LLP

*(List on a continuation page additional parties this attorney represents in this case.)*

2.    Attorney information for service as required by Trial Rule 5(B)(2)

| | |
|---|---|
| Tyler J. Moorhead | BOSE MCKINNEY & EVANS LLP |
| Attorney No. 34705-73 | 111 Monument Circle, Suite 2700 |
| | Indianapolis, IN  46204 |
| Philip R. Zimmerly | Phone:  (317)  684-5000 |
| Attorney No. 30217-06 | Fax:  (317)  684-5173 |
| | |
| | TMoorhead@boselaw.com |
| | PZimmerly@boselaw.com |

**IMPORTANT**:  Each attorney specified on this appearance:

(a)    certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)    **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

(c)    understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3.    This is a **PL** case type as defined in administrative Rule 8(B)(3).

4.    This case involves child support issues. Yes _____ No **X** *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5.    This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No **X** *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)*  The party shall use the following address for purposes of legal service:

_____    Attorney's address
_____    The Attorney General Confidentiality program address
        (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.state.in.us**).
_____    Another address (provide) _____

6.    This case involves a petition for involuntary commitment.  Yes _____ No **X**

If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

(a)    Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:

    _____

(b)    State of Residence of person subject to petition: _____

(c)    At least one of the following pieces of identifying information:

    (i)    Date of Birth _____

    (ii)    Driver's License Number _____

        State where issued _____ Expiration date _____

2

      (iii)    State ID number _____

             State where issued _____ Expiration date _____

      (iv)    FBI number _____

      (v)     Indiana Department of Corrections Number _____

      (vi)    Social Security Number is available and is being provided in an attached confidential document Yes \_\_\_\_ No \_\_\_\_

7.     There are related cases: Yes \_\_\_\_ No **X** *(If yes, list on continuation page.)*

8.     Additional information required by local rule: _____

9.     There are other party members: Yes \_\_\_\_ No **X** *(If yes, list on continuation page.)*

10.    This form has been served on all other parties and Certificate of Service is attached:

     Yes **X** No \_\_

Dated: September 15, 2023

                               */s/ Philip R. Zimmerly*
                                Tyler J. Moorhead (#34705-73)
                                Philip R. Zimmerly (#30217-06)
                                BOSE McKINNEY & EVANS LLP
                                111 Monument Circle, Suite 2700
                                Indianapolis, IN 46204
                                T: (317) 684-5000
                                F: (317) 684-5173
                                tmoorhead@boselaw.com
                                pzimmerly@boselaw.com

                                *Attorneys for Defendant,*
                                *Nice Pak Products, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 15, 2023 I electronically filed the foregoing document using the Indiana E-Filing System (IEFS).  I also certify that the foregoing document was served upon the following person(s) via IEFS:

Lynn A. Toops
Amina A. Thomas
Cohen & Malad LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

*/s/ Philip R. Zimmerly*

4639835

4

Filed: 9/15/2023 3:40 PM
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | MARION COUNTY SUPERIOR COURT |
| | ) SS: | |
| MARION COUNTY | ) | CAUSE NO. 49D01-2308-PL-033187 |

DARIN JOHNSON, on behalf of himself and )
all others similarly situated, )
           )
           Plaintiff, )
           )
v. )
           )
NICE PAK PRODUCTS, INC., )
           )
           Defendant. )
           )
           )

## <u>DEFENDANT'S NOTICE OF AUTOMATIC ENLARGEMENT OF TIME</u>

Defendant, Nice Pak Products, Inc. ("Defendant"), hereby gives notice under Marion County LR49-TR5-Rule 203(D) of an automatic thirty (30) day enlargement of time in which to answer or otherwise respond to Plaintiff's Complaint, to and including October 20, 2023. In support, Defendant states as follows:

1.      The Complaint was filed with this Court on August 23, 2023.

2.      Copies of the Complaint and Summons were served on Defendant on August 28, 2023 via certified mail.

3.      Defendant's answer or other responsive pleading is due at the earliest on September 20, 2023, which time has not yet expired.

4.      Pursuant to LR49-TR5-Rule 203(D) and this Notice, the date by which Defendant is now required to answer or otherwise respond to Plaintiff's Complaint is October 20, 2023.

WHEREFORE, Defendant, Margaret Mary Hospital, Inc., by counsel, respectfully gives notice of an automatic enlargement of time within which to answer or otherwise respond to Plaintiff's Complaint, through and including October 20, 2023.

Respectfully submitted,

*/s/ Philip R. Zimmerly*
Tyler J. Moorhead (#34705-73)
Philip R. Zimmerly (#30217-06)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
T: (317) 684-5000
F: (317) 684-5173
tmoorhead@boselaw.com
pzimmerly@boselaw.com

*Attorneys for Defendant,*
*Nice Pak Products, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 15, 2023 I electronically filed the foregoing document using the Indiana E-Filing System (IEFS). I also certify that the foregoing document was served upon the following person(s) via IEFS:

Lynn A. Toops
Amina A. Thomas
Cohen & Malad LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

*/s/ Philip R. Zimmerly*

4639852

2

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Darin Johnson v. Nice-Pak Products, Inc.

| | |
|---|---|
| Case Number | 49D01-2308-PL-033187 |
| Court | Marion Superior Court 1 <br> Commercial Court (Provisional) |
| Type | PL - Civil Plenary |
| Filed | 08/23/2023 |
| Status | 08/23/2023 , Pending (active) |

## Parties to the Case

Defendant   Nice-Pak Products, Inc.

**Attorney**
Philip Richard Zimmerly
*#3021706, Lead, Retained*

Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000(W)

**Attorney**
Tyler John Moorhead
*#3470573, Retained*

111 Monument Circle Suite 2700
Bose McKinney & Evans LLP
Indianapolis, IN 46204
317-684-5000(W)

Plaintiff      Johnson, Darin

**Attorney**
Lynn Antoinette Toops
*#2638649, Lead, Retained*

One Indiana Square
Suite 1400
Indianapolis, IN 46204
317-636-6481(W)

**Attorney**
Amina Anne Thomas
*#3445149, Retained*

Cohen & Malad, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
317-636-6481(W)

## Chronological Case Summary

| 08/23/2023 | **Case Opened as a New Filing** |
|---|---|
| 08/24/2023 | **Complaint/Equivalent Pleading Filed** |
| | Class Action Complaint - Nice-Pak.pdf |
| | Ex A - Data Breach Notice - Nice-Pak Products_Redacted.pdf |
| | Ex B -Website Notice.pdf |
| | Class Action Complaint |

| | Filed By: | Johnson, Darin |
|---|---|---|
| | File Stamp: | 08/23/2023 |

| 08/24/2023 | **Appearance Filed** | | |
| --- | --- | --- | --- |
| | Notice of Appearance of Lynn A. Toops and Amina A. Thomas | | |
| | For Party: | Johnson, Darin | |
| | File Stamp: | 08/23/2023 | |

| 08/24/2023 | **Subpoena/Summons Filed** | | |
| --- | --- | --- | --- |
| | Summons to Nice-Pak Products, Inc. | | |
| | Filed By: | Johnson, Darin | |
| | File Stamp: | 08/23/2023 | |

| 08/24/2023 | **Commercial Court Identifying Notice** | | |
| --- | --- | --- | --- |
| | Notice Identifying Commercial Court Docket Case | | |
| | Filed By: | Johnson, Darin | |
| | File Stamp: | 08/23/2023 | |

| 09/15/2023 | **Appearance Filed** | | |
| --- | --- | --- | --- |
| | Appearance by PRZ and TJM | | |
| | For Party: | Nice-Pak Products, Inc. | |
| | File Stamp: | 09/15/2023 | |

| 09/15/2023 | **Notice Filed** | | |
| --- | --- | --- | --- |
| | D's Notice of Automatic EOT | | |
| | Filed By: | Nice-Pak Products, Inc. | |
| | File Stamp: | 09/15/2023 | |

## Financial Information

* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances shown, please contact the Clerk's Office.

### Johnson, Darin
Plaintiff

Balance Due (as of 09/27/2023)

0.00

Charge Summary

| Description | Amount | Credit | Payment |
| --- | --- | --- | --- |
| Court Costs and Filing Fees | 232.00 | 0.00 | 232.00 |

Transaction Summary

| Date | Description | Amount |
| --- | --- | --- |
| 08/24/2023 | Transaction Assessment | 232.00 |
| 08/24/2023 | Electronic Payment | (232.00) |

| This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record. |
| --- |