UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DARIN JOHNSON On behalf of themselves and all others similarly situated,<br>ROBERT WILLEY On behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>NICE PAK PRODUCTS, INC., PROFESSIONAL DISPOSABLES INTERNATIONAL, INC.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:23-cv-01734-JPH-CSW |

**ORDER**

Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement under FRCP 23(e) after reaching a Settlement Agreement and Release ("the Settlement Agreement") with Defendants Nice Pak Products, Inc., and Professional Disposables International, Inc. Dkt. 71. This Proposed Settlement Agreement resolves claims arising from a data breach where approximately 8,659 current and former employees' confidential personal and health information were allegedly compromised. Dkt. 71-1 at 2 ¶ 1.

Under Rule 23(e)(2), a court may only approve a settlement after finding it "fair, reasonable, and adequate." Here, the Court requires additional information so that may fulfill its duty of "scrutinizing" the Settlement Agreement for fairness and adequacy to Class Members who would be bound by it. *Reynolds v. Beneficial Nat. Bank*, 268 F.3d 277, 279–80 (7th Cir. 2022) (explaining that

1

district judges are required "to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions."). The Settlement Agreement is a claims-made settlement that does not "establish, definitively, an amount for benefit of the class members" and requires Defendants only "to give security against all potential claims." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 831–32 (7th Cir. 2018). Although courts regularly approve claims-made settlements, they "are disfavored because . . . they tend to promise far more than they deliver" and may be "less justifiable when combined with other provisions, such as burdensome claiming processes and clear sailing agreements." William B. Rubenstein, 4 Newberg Class Actions § 13:7 (6th ed. 2025).

Here, Plaintiffs assert that their "attorney fee request is a fee well below one-third of the value of the total benefit won on behalf of the class," dkt. 71-2 at 16. Neither the Proposed Settlement Agreement nor the briefs, however, calculate the total potential value for the class. This information is necessary so the Court can determine if the relief to Class Members is adequate.

Also related to the issue of attorneys' fees, it is unclear if there is a "clear sailing agreement." The Proposed Settlement Agreement states that "Class Counsel will file a Fee and Expense Application for an award of attorneys' fees and litigation expenses not to exceed $200,000." Dkt. 71 at 14 ¶ 78. There is no indication, however, whether Defendants have agreed to not contest class counsel's fee request up to that amount. This information is also necessary for

the Court to determine the fairness, adequacy, and reasonableness of the Agreement under Rule 23(e)(2). *See* Rubenstein, 4 Newberg Class Actions § 13:7.

Last, the Settlement Agreement's requirements for reimbursement of certain claimed losses appear to be sufficiently burdensome as to likely dissuade potential Class Members from filings claims. The Proposed Settlement Agreement would give Class Members an opportunity to submit claims for (1) lost time compensable at $22.50 for up to four hours ($90.00 total), (2) up to $450.00 for out-of-pocket ordinary expenses supported by third-party documentary evidence, (3) up to $4,500.00 in proven extraordinary expenses with third-party documentation, and (4) enrollment in Privacy Shield Pro, a data protection service. Dkt. 41 at 7–8 ¶ 49.

The requirement of third-party documentation could make the claims process burdensome and possibly deter individuals from submitting claims, thereby allowing Defendants "to pay only a small percentage of the potential total recovery to the class." Rubenstein, 4 Newberg Class Actions § 13:7. The breaches occurred over two years ago, dkt. 71-1 at 2 ¶ 1, so requiring class members to provide a "written description of activities performed, and an attestation that the time claimed was reasonably related to responding to the effects of the Data Breach," *id.* at 8 ¶ 49.(i), may prove so burdensome and daunting as to dissuade some Class Members from seeking compensation for lost time spent remediating the effects of the Data Breach.

Similarly, the requirements for a Class Member to seek reimbursement for "Ordinary Expenses" may prove unduly burdensome. It seems unlikely, for

3

example, that a Class Member would have "supporting third-party documentation" for items such as "postage, copying, mileage," *id.* at ¶ 49.(ii), from the summer of 2023. While it may be reasonable to expect Class Members to be able to document big-ticket items like legal and accounting fees, documentation for the smaller, out-of-pocket costs seems too much.

    Therefore, to provide the Court with "sufficient information to make a judgment" on the reasonableness of the Settlement Agreement, *Reynolds,* 288 F.3d at 280, the Court **ORDERS the parties to submit by December 10, 2025,** a supplemental joint memorandum addressing the issues raised by the Court in this order.

**SO ORDERED.**

Date: 11/18/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.