UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARIN JOHNSON On behalf of themselves and all others similarly situated, ROBERT WILLEY On behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 1:23-cv-01734-JPH-CSW ) |
| NICE PAK PRODUCTS, INC., PROFESSIONAL DISPOSABLES INTERNATIONAL, INC., | ) ) ) ) |
| Defendants. | ) ) |

**FINAL CLASS SETTLEMENT APPROVAL ORDER**

Plaintiffs allege that Defendants Nice Pak Products, Inc. and Professional

Disposables International, Inc., experienced a data breach which may have

compromised the private and protected information of Defendants' current and

former employees.  Plaintiffs have asked the Court for final approval of the

Revised Class Action Settlement Agreement and Release ("Revised Agreement"),

dkt. 84, and to award attorneys' fees, dkt. 81.  The Court has considered

counsels' arguments that were presented at the June 12, 2026, Fairness

Hearing and the filings submitted in support of approval, dkts. 82, 85, 87, 88,

92.  For the reasons below, the Court **GRANTS** the Unopposed Motion for Final

Approval, dkt. [84], and the Motion for Attorneys' Fees, dkt. [81], and

**APPROVES** the Revised Agreement.

# I.
## Facts and Background

On November 30, 2023, Plaintiffs filed their amended class action complaint. Dkt. 20. In it, Plaintiffs allege that Nice Pak and Professional Disposables suffered a data breach between May 28 and June 15, 2023, that affected approximately 8,500 current and former employees (the "Data Breach"). *Id.* at 8–9 ¶ 37, 11 ¶ 54; dkt. 76 at 2. Plaintiffs assert that the Data Breach compromised Plaintiffs' personal identifiable information ("PII") and personal health information ("PHI," or collectively, "Private Information"), including "Class Members' full names, addresses, Social Security numbers, . . . and medical and health insurance information." Dkt. 20 at 2 ¶ 6. Plaintiffs further allege that the Defendants didn't detect the breach until two weeks after it occurred, *id.* at 11 ¶¶ 53–54, and didn't notify employees until two months later. *Id.* at 12–13 ¶ 56.

Plaintiffs asserted claims of negligence, negligence per se in violation of the Federal Trade Commission Act, breach of implied contract, unjust enrichment, bailment, and violation of the New York Deceptive Trade Practices Act. *Id.* at 27–39. For relief, Plaintiffs demand that "Nice Pak compensate the class for their losses, protect their data and identities from fraud, and pay the costs required to deliver that relief." Dkt. 71-2 at 2.

Defendants then moved to dismiss Plaintiffs' claims. Dkt. 26. The Court granted that motion in part but allowed Plaintiffs' claims for negligence, negligence per se, and breach of implied contract to proceed. Dkt. 45 at 20.

On August 11, 2025, Plaintiffs filed an unopposed motion for preliminary approval of class action settlement.  Dkt. 71.  The Court then ordered the parties to submit a supplemental memorandum to provide the Court with sufficient information to address the fairness and adequacy of the settlement to the Class Members who would be bound by it.  Dkt. 72 at 4.  In response, the parties submitted a supplemental brief and attached revised versions of the Agreement, Class Action and Collective Action Notice of Settlement, and Claim Form.  *See* dkts. 76; 76-1.

The Court then preliminary approved the Revised Agreement, certified the settlement class action, and approved notice and the procedure for notice to potential Class Members.  Dkt. 80 (Preliminary Approval Order).[1]  The Court also preliminary approved Darin Johnson and Robert Willey as the Class Representatives.  *Id.* at 12–13.  The preliminary certified class includes:

> All individuals in the United States who were sent a notice by Defendants informing them that their Personal Information was accessed without authorization in the Data Breach. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendants, Defendants' subsidiaries, parent companies successors, predecessors, and any entity in which Defendants or Defendants' parents have a controlling interest, and Defendants' current or former officers and directors; and (3) Settlement Class Members who submit a valid request for exclusion prior to the Opt-Out Deadline.

*Id.* at 10.  Last, the Court preliminary approved Class Counsel.  *Id.* at 14–15.

---

[1] The Court adopts and incorporates by reference the analysis and findings set forth in the Preliminary Approval Order, dkt. 80.

To settle the claims in this case, Nice Pak and Professional Disposables agreed to provide relief for Class Members on a claims-made basis. *See* dkt. 76-1. Class Members may submit a claim for (1) reimbursement of Ordinary Expenses up to $450 (up to $50 without documentation); (2) reimbursement of documented out-of-pocket Extraordinary Expenses up to $4,500 for Class Members who were the victim of actual documented identify theft; (3) reimbursement for lost time for up to four hours at $22.50 per hour; and (4) enrollment in CyEx Privacy Shield Pro, which provides privacy monitoring products. *Id.* at 8–9 (Revised Agreement ¶ 49(i)–(iv)). The Defendants also agreed to make business practice changes to adequately secure its systems. *Id.* (Revised Agreement ¶ 49(v)). The costs to implement these security measures are approximately $461,300.00, with some costs recurring annually. Dkt. 92-3 at 1–2 (LaTorre Decl.).

Pursuant to the Revised Agreement, Defendants also agreed to bear the costs of approved attorneys' fees, expenses, and Service Awards for the Class Representatives. Dkt. 76-1 at 10 (Revised Agreement ¶ 57(ii)). Class Counsel filed an unopposed motion for $200,000 in attorneys' fees and expenses and service awards of $5,000 for the two Class Representatives. Dkt. 81. Pursuant to the Revised Agreement, attorneys' fees, expenses, and service awards will not be deducted from the relief obtained by Class Members; instead, the Defendants shall pay the Settlement Administrator all costs to satisfy the full amount of Approved Claims and separately pay the costs of approved attorneys'

fees and expenses, and Service Awards.  *See* dkt. 76-1 at 10 (Revised Agreement ¶ 57 (i)–(iii)).

At the fairness hearing on June 12, 2026, the parties confirmed that 138 Class Members submitted claims (a 1.61% claims rate), no Class Members opted out, and there were no objections.  Dkt. 87-1 at 5–6 (Liebhold decl.).  The Court ordered the Class Counsel to file a supplemental brief and declaration regarding any updates to the final number of claims submitted, the reasonableness of the requested fees, and details such as the hourly rates and experience of the attorneys' who worked on the case.  Dkt. 89.  There were no updates to the final number of claims submitted.  Dkt. 92-1 at 3 (Liebhold updated decl.).

## II.
## Legal Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties.").

Any settlement that results in the dismissal of a class action requires court approval.  *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).  After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it

is 'fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). "[D]istrict courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

### III.
### Analysis

### A. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2009), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160–61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794. In addition, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity

of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz*, 527 U.S. at 849.

The Court previously analyzed these factors and gave preliminary approval to class certification. Dkt. 80. The same reasons that supported the Court's preliminary approval of class certification also support final certification of the class. *Id.* at 9–13.

### B. Appointment of Class Counsel

After a court certifies a class pursuant to Rule 23, the court is required to appoint class counsel to represent the class members.  *See* Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court previously considered these factors and designated Lynn Toops and Amina Thomas of Cohen & Malad, LLP and Gary Klinger and David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel. Dkt. 80 at 15.  There are no new facts that weigh against this decision.

### C. Notice

For settlement classes, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  The Preliminary Approval Order approved the content of the notice and proposed manner of notice.  Dkt. 80 at 24–25.  The Court now grants final approval of the notice, which adequately informed the Class members of the terms of the Settlement Agreement, the process available to obtain monetary and credit monitoring relief, their right to request exclusion from the Class, and their opportunity to file written objections and appear to be heard at the Final Approval hearing.  Dkt. 87 at 15–30.

The Settlement Administrator, Simpluris, Inc., received data files containing 8,863 Class Members' names and addresses. *Id.* at 3 (Liebhold Decl.). After removing duplicative and foreign addresses, the final class list contained 8,573 Class Members. *Id.* at 4. Simpluris sent direct notice via U.S. Mail and Email to putative class members and established a phone number, email, and website to communicate and receive Class Member inquiries, which was included in the Class Notice. *Id.* at 2–3, 5.

The parties have since followed the manner of notice set forth in the Revised Agreement and the Preliminary Approval Order. *Id.* at 3–4. Simpluris sent Email Notice to 4,389 Class Members for whom an email address was available. *Id.* at 4. 4,230 Email Notices were successfully delivered. *Id.* Simpluris then sent Mail Notice to 4,183 Class Members for whom a valid mailing address was available. *Id.* at 4. 82 Mailed Notices were returned by USPS. *Id.* Of those, Simpluris found updated addresses for 12 Class Members, and 70 Notices were determined undeliverable because no updated address was available. *Id.* In sum, 8,343 individuals received direct Notice, which equates to approximately 97.31% of the Class.[2] *Id.* The Court therefore approves manner of notice to class members under the requirements of Fed. R. Civ P. 23(e)(1)(B).

---

[2] Ms. Liebhold's declaration states that notice was successfully delivered to 8,500 Class Members. Dkt. 87 at 4. Based on her detailed numbers, however, this final number seems to be an error; the numbers for successful notice via email (4,230) and mail (4,113) equate to 8,343 Class Members receiving direct notice, not 8,500, thereby lowering the final notice percentage to 97.31% of the Class.

### D. Motion for Attorneys' Fees, Expenses, and Service Awards

#### i.    Attorneys' fees

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  "In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832–33 (7th Cir. 2018).  When considering reasonableness, district courts may consider the award either as a percentage of the fund or through the lodestar method.  *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

Here, Class Counsel applies the percentage of fund method.  Dkt. 92 at 4–5.  Because this is a claims-made fund, which did not "establish, definitively, an amount for benefit of the class members," and required Defendants only "to give security against all potential claims," the amount of the fund must be determined by calculating the value of approved claims and other benefits to the class.  *See Camp Drug Store, Inc.,* 897 F.3d at 831–32, 833 n.25 ("[A] district court should compare attorney fees to what is actually recovered by the class.").  Here, Class Members claimed approximately $125,976.99 in benefits.[3]

---

[3] This figure is calculated by adding the recovery for the four different types of relief: 106 Class Members claimed three years of CyEx Privacy Shield Pro, for a value of $95,361.84 (106 claimants x $24.99 per month x 36 months); 73 Class Members

10

Dkt. 92 at 4–5.  In addition to these benefits, the Defendants paid for and implemented certain business practice changes to further safeguard Class Members' personal information within its systems.  *Id.* at 5–6.  The costs to implement these security measures are approximately $461,300.00, with some costs recurring annually.  Dkt. 92-3 at 1–2 (LaTorre Decl.).  Considering the value of these security changes, the total value to the class is $587,276.99.  *See Bell v. Pension Comm. of ATH Holding Co., LLC,* No. 1:15-cv-02062-TWP-MPB, 2019 WL 4193376 at *2 (S.D. Ind. 2019) ("A court must also consider the overall benefit to the class, including non-monetary benefits, when evaluating the fee request.") (citing Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)).

Using the percentage-method formula, Class Counsel's request of $200,000 represents 25.4%[4] of the overall benefits obtained by the class, which is well within the normal rate of compensation for data breach class action settlements in the Seventh Circuit.  *Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent."); *In re TikTok, Inc., Consumer Priv. Litig.,* 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022)

---

claimed Lost Time Expenses, totaling $6,030.00 (268 hours x $22.50 per hour); 3 Class Members claimed Extraordinary Expenses, totaling $23,090; and 31 Class Members claimed Ordinary Expenses, totaling $1,495.15.  Dkt. 92 at 4–5.

[4] The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack,* 768 F.3d 622, 630 (7th Cir. 2014).  So, to calculate the percentile of attorneys' fees here, take the requested amount of fees ($200,000) over the total class value plus requested fee ($587,276.99 + $200,000), which equals 25.40%.

(granting one-third fee in data breach case noting "[a] one-third flat fee is also routine for class action settlements in similarly complex fields"); *Smith v. Apria Healthcare LLC*, 2025 WL 3207145, No. 1:23-cv-01003-JPH-KMB, *5 (S.D. Ind. Nov. 17, 2025) (finding a fee amounting to 33.57% of the settlement fund in data breach case as reasonable).

Further supporting the reasonableness of the fees is that the attorneys' fees and expenses will not be deducted from the Class Members' recovery. Because this is a claims-made fund, instead of a common fund, the Defendants will pay the Class Members' claims separately from the attorneys' fees and expenses award. *See* dkt. 76-1 at 11 (Revised Agreement ¶ 57 (i)–(iii)). Thus, the Class Members will receive the same benefits regardless of what Class Counsel is awarded. *Cf. Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (explaining that in common fund cases "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members").

The Court therefore approves as reasonable an attorneys' fees and expenses award of $200,000. Given that the attorneys' fees awarded to Class Counsel fit comfortably within the parameters of reasonableness under the percentage-method formula, the Court does not conduct a lodestar cross-check analysis. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have

never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.").

### ii.   Service Awards

Class Counsel also requests Service Awards of $5,000 to the two named plaintiffs, Darin Johnson and Robert Willey.  Dkt. 81.  Because "a named plaintiff is an essential ingredient of any class action . . . an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Camp Drug Store, Inc.,* 897 F.3d at 834.  To determine the appropriateness of an incentive award a "court evaluates the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

Here, Class Counsel states that the two named Plaintiffs have been highly involved in this litigation; they "regularly consulted with Class Counsel, provided documents and information, reviewed pleadings, and participated in the settlement conference, including Mr. Willey traveling for the settlement conference." Dkt. 81-1 at 2 (Toops Decl.).  Beyond this effort, the named plaintiffs adequately protected the interests of the class and helped obtain a favorable settlement for Class Members.  *See* dkt. 80 at 12.  An award of $5,000 to Mr. Johnson and Mr. Willey is therefore reasonable.  *See Chambers v. Together Credit Union,* No. 19-CV-00842-SPM, 2021 WL 1948452, at *3 (S.D. Ill. May 14, 2021) ("In the Seventh Circuit, . . .  class representative service awards of $10,000 to $25,000 or more are not uncommon."); *Burnett v.*

13

*Conseco Life Ins. Co.,* No. 1:18-CV-00200-JPH-DML, 2021 WL 119205, at *12 (S.D. Ind. Jan. 13, 2021) (granting $25,000 service award to each of two class representatives).

### E. Final Settlement Approval

The Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided by the settlement is adequate, and (4) the proposal treats class members equitably relative to each other. Additionally, the Seventh Circuit has also identified the following factors as considerations under Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863 (7th Cir. 2014)

The Court previously considered these factors in connection with granting preliminary approval to the Revised Agreement. Dkt. 80 at 15–24. At the fairness hearing, the Court heard additional arguments from counsel on "the strength of the case for plaintiffs on merits, balanced against the extent of the settlement offer." *Wong,* 773 F.3d at 859. This is "[t]he most important

14

factor relevant to the fairness of a class action settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In balancing the strength of the plaintiffs' case against the amount offered in a proposed settlement, district courts "should begin by quantifying the net expected value of continued litigation to the class . . . [t]o do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). However, more recently, the Circuit has clarified that "the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017). Other reliable indicators include extensive arm's-length negotiations with a third-party mediator, and the parties contentiously litigating a motion to dismiss. *Wong*, 773 F.3d at 864.

Here, considering the parties' filings and arguments at the fairness hearing, the Court is satisfied that there are such reliable indicators of fairness, reasonableness, and adequacy:

- The parties litigated a motion to dismiss, which the Court granted in part as to three claims while allowing three claims to proceed. Dkt. 45 at 20.
- The Settlement Agreement was reached at a Settlement Conference with Magistrate Judge Wildeman. Dkt. 85 at 13.

15

- The parties revised the agreement to allow Class Members to receive up to $50 in Ordinary Expenses reimbursement without any documentation. *See* dkt. 72; dkt. 76-2 (Revised Agreement with redlines).

- Last, Class counsel explained at the fairness hearing and in their supporting briefs that they undertook a significant risk in bringing this litigation, because "[d]ata breach cases are complex, with novel issues and evolving laws posing hurdles even at the pleading stage." Dkt. 85 at 14; *see Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result.").

So, considering the risks and the real benefits provided to the Class Members—including compensation for actual losses and protection of their Private Information after the breach—the strength of the Plaintiffs' case compared to the Defendants' proposed relief weighs in favor of fairness, reasonableness, and adequacy of the Revised Agreement.

For these reasons, and the reasons that supported the Court's preliminary approval of class certification, dkt. 80 at 15–24, the Revised Agreement is fair, reasonable, and adequate.

## IV.
## Conclusion

The Court **GRANTS FINAL APPROVAL** of the Revised Class Action Settlement Agreement, dkt. 84, as fair, adequate, and reasonable under Federal Rule of Civil Procedure 23(e)(2).  Defendants shall pay the Settlement Administrator an amount sufficient to satisfy all Approved Claims and the Settlement Administrator shall distribute the Settlement Benefits pursuant to the terms of the Revised Agreement.

The Court further finds, approves, and orders as follows:

1. The Class is certified pursuant to Federal Rule of Civil Procedure 23(b)(3) for settlement purposes.

2. The appointments of (a) Darin Johnson and Robert Willey as Named Plaintiffs, (b) Lynn Toops and Amina Thomas of Cohen & Malad, LLP and Gary M. Klinger and David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel, and (c) Simpluris, Inc., as Settlement Administrator.

3. A $5,000 service award to each of the Class Representatives, for a total of $10,000, and $200,000 in attorneys' fees and expenses to Class Counsel, to be paid according to the terms of the Revised Agreement.

4. Class Members' remaining claims of negligence, negligence per se, and breach of implied contract against Defendants are dismissed **without prejudice**.  The Court expressly retains jurisdiction over the parties and the Revised Agreement for the purpose of enforcing the Revised Agreement.  *See Shapo v. Engle,* 463 F.3d 641, 643 (7th Cir. 2006);

17

*Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1023 (7th Cir. 1991) ("In a class action, the district court has a duty to class members to see that any settlement it approves is completed.").

5.  All Class Members are bound by the terms of the Revised Agreement and fully release and discharge their claims.

6.  This Final Approval Order, and all statements, documents, or proceedings relating to the Revised Agreement shall not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing by Defendants, or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage due to the Data Breach. Notwithstanding the above, the Revised Agreement and this Final Approval Order may be filed in any action by Defendants, Class Counsel, or Settlement Class Members seeking to enforce the Revised Agreement or the Final Approval Order.

7.  Plaintiffs' Motion for Attorney's Fees, dkt. 81, is **GRANTED**.

**SO ORDERED.**

Date: 7/1/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

18